# United States Court of Appeals for the Federal Circuit

---

**3M COMPANY**,
*Plaintiff-Appellant,*

v.

**AVERY DENNISON CORPORATION,**
*Defendant-Appellee,*

---

2011-1339

---

Appeal from the United States District Court for the District of Minnesota in Case No. 10-CV-3849, Chief Judge Michael J. Davis.

---

Decided: March 26, 2012

---

JOHN A. DRAGSETH, Fish & Richardson, P.C., of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief were JOHN C. ADKISSON and DEANNA J. REICHEL. Of counsel on the brief was KEVIN H. RHODES, 3M Innovative Properties Company, of St. Paul, Minnesota.

DAVID L. BILSKER, Quinn Emanuel Urquhart & Sullivan, LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief were CHARLES K.

VERHOEVEN, CHRISTOPHER E. STRETCH, EMILY C. O'BRIEN; and JAMES E. BAKER, of New York, New York.

---

Before RADER, *Chief Judge*, and LOURIE and LINN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

3M Company ("3M") appeals from the district court's dismissal of its declaratory judgment action against Avery Dennison Corporation ("Avery") for lack of a case or controversy. *See 3M Co. v. Avery Dennison Corp.*, No. 0:10-CV-3849, 2011 WL 1193382 (D. Minn. Mar. 29, 2011) ("*DJ Op.*"). Because we hold that the district court erred in determining that it would not have jurisdiction under the facts as alleged by 3M, and the district court did not resolve the parties' factual disputes necessary to determine if jurisdiction was proper, we *vacate* the district court's judgment and *remand* for further proceedings.

BACKGROUND

I.

This patent case relates to retroreflective sheeting technology, which is used in a variety of applications, such as road signs. Complaint, *3M Co. v. Avery Dennison Corp.*, No. 0:10-CV-3849 (D. Minn. Sept. 3, 2010) ("*Complaint*").[1] 3M and Avery are direct competitors in the retroreflective sheeting product market. *Id.* at 2–3. Since 2005, 3M has manufactured and sold retroreflective sheeting under the Diamond Grade DG³ product line. *Id.*

---

[1] Because the district court did not resolve the parties' factual disputes and instead concluded that subject matter jurisdiction was lacking even under the facts alleged by 3M, we rely on the facts alleged in 3M's complaint for the purposes of this appeal.

at 3. Avery sells a competing product sold under the OmniCube brand. *Id.* 3M's declaratory judgment action puts at issue two patents that relate to retroreflective sheeting technology, specifically U.S. Patents RE40,455 and RE40,700 (collectively, the "Heenan patents"). *Id.* at 4, 6; *see also id.* at Ex. 1 and Ex. 2.

The parties have a history of patent litigation, starting in 2001. That year, Avery sued 3M and alleged that a prior version of the Diamond Grade DG³ product infringed two patents not at issue here. *Id.* at 4. In addition to retroreflective sheeting, the parties were engaged in a series of litigations relating to structured adhesive products and closure tape tab laminates in the United States and Europe. *Id.* at 4–5.

Those litigations settled by 2008. *Id.* In the course of settling those cases, 3M and Avery engaged in confidential settlement discussions. *Id.* at 7. 3M alleges that those confidential discussions did not relate to the Heenan patents or any retroreflective sheeting products. *Id.*

It was during the settlement discussions relating to the structured adhesive products and closure tab tape laminates disputes that 3M became aware that Avery was prosecuting reissue applications for the Heenan patents before the U.S. Patent and Trademark Office ("PTO"). *Id.* at 6. According to 3M, "Avery sought reissuance of the Heenan patents in an effort to correct errors in the patents and to better position the patents for litigation." *Id.*

The parties' discussions regarding the Heenan patents began in 2009.[2] On March 31, 2009, Avery's Chief

---

[2] In its complaint, 3M also alleged that during settlement negotiations it became aware that Avery was monitoring the launch of the Diamond Grade DG³ product and that Avery had examined the product in comparison

Intellectual Property Counsel, Raj Sardesai, telephoned 3M's Chief Intellectual Property Counsel, Kevin Rhodes. *Id.* at 7. In that conversation, Sardesai stated that 3M's Diamond Grade DG[3] sheeting products "may infringe" the Heenan patents and that "licenses are available." *Id.*

Two days later, Rhodes telephoned Sardesai and informed him that 3M had rejected Avery's offer to license the Heenan patents. *Id.* Rhodes also inquired if Avery had any new information that would cause 3M to revisit its decision. *Id.* Sardesai responded that Avery had performed an analysis of 3M's Diamond Grade DG[3] product with reference to the Heenan patents and that Avery would "send claim charts." *Id.* Avery, however, never provided 3M with claim charts. *Id.* The Heenan patents emerged from reissue proceedings by April 2009. *Id.* at Ex. 1 and Ex. 2.

## II.

In 2010, 3M became aware that Avery planned to launch a competing retroreflective sheeting product, the OmniCube T-11500. *Id.* at 8. That same year, Avery filed another patent infringement suit against 3M, alleging that an unrelated product, 3M's label sheets, infringed an Avery patent not at issue in this case. *Id.* On June 25, 2010, 3M filed a patent infringement suit against Avery, alleging that the OmniCube T-11500, in addition to other products, infringed thirteen 3M patents. *Id.* at 9. Included in the complaint were counts for a declaratory judgment of noninfringement, invalidity, and intervening

---

to the Heenan patents' claims. *Id.* at 6. Before the district court, however, 3M conceded that conversations prior to 2009 were covered by a confidentiality agreement that precluded their use as a basis to support a declaratory judgment action. *See DJ Op.*, 2011 WL 1193382, at *4 n.2.

rights concerning the Heenan patents. *Id.* That same day, Rhodes telephoned Sardesai and stated that 3M would dismiss its declaratory judgment claims if Avery provided 3M with a covenant not to sue. *Id.* Avery did not respond. *Id.* 3M's outside litigation counsel also inquired if Avery planned to sue 3M for infringement of the Heenan patents. *Id.* Avery's counsel did not answer 3M's question. *Id.*

In September, 3M amended its complaint and cancelled its declaratory judgment claims. *Id.* at 10. At the same time, 3M filed its declaratory judgment claims as a new complaint in a separate action. *Id.* It is from that separate action that 3M appeals.

Early in the case, Avery moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss 3M's declaratory judgment claims for lack of subject matter jurisdiction. In its motion, Avery asserted a factual challenge to 3M's declaratory judgment complaint. *DJ Op.*, 2011 WL 1193382, at \*3; *see also Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993) (discussing facial challenges and factual challenges to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)). The district court granted Avery's motion but, instead of resolving the disputed facts, concluded that "even accepting the facts as set forth by 3M," subject matter jurisdiction did not exist at the time 3M filed its declaratory judgment complaint. *DJ Op.*, 2011 WL 1193382, at \*4.

In dismissing 3M's declaratory judgment action, the district court gave a number of reasons why 3M failed to allege a justiciable controversy. First, the court concluded that "3M's subjective belief as to Avery's motives for instituting reissue proceedings concerning the Heenan patents is immaterial" because the jurisdictional inquiry

is objective. *Id.* at \*5. Second, the court concluded that the prior litigation between the parties did not support declaratory judgment jurisdiction because it concerned "unrelated patents and products." *Id.* Third, the court concluded that the discussions between Rhodes and Sardesai did not create "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The court arrived at that conclusion because the parties engaged only in informal discussions and Avery did not provide a detailed infringement analysis or propose deadlines for 3M to respond. *Id.* Finally, the court concluded that the passage of time between 3M's discussions with Avery and when 3M filed its declaratory judgment action counseled against holding that the parties' dispute was of sufficient immediacy to warrant a declaratory judgment. *Id.* at \*6.

The district court thereafter entered judgment against 3M, from which it timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

The Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "a case of actual controversy" in the Act refers to the types of "cases" and "controversies" that are justiciable under Article III of the U.S. Constitution. *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 239–40 (1937).

Although there is no bright line rule to determine whether a declaratory judgment action satisfies Article III's case-or-controversy requirements, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life*, 300 U.S. at 240–41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Even if there is a case or controversy, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In this case, having concluded that jurisdiction was lacking, the district court did not reach the issue of whether it would exercise its discretion to hear or dismiss 3M's declaratory judgment claims.

In determining if an action presents a justiciable Article III controversy, one typically employs the doctrines of standing or ripeness. *See MedImmune*, 549 U.S. at 128 n.8. In this case, the parties frame the issue as a standing question.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally pro-

tected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43). Following *MedImmune*, we have held that to establish an injury in fact traceable to the patentee a declaratory judgment plaintiff must allege an affirmative act by the patentee relating to the enforcement of his patent rights. *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007)

"Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005), *overruled on other grounds*, *MedImmune*, 549 U.S. at 130-31. We review *de novo* a district court's dismissal of a patent claim for lack of an actual controversy in light of a particular set of facts. *See SanDisk Corp.*, 480 F.3d at 1377.

## II.

As an initial matter, the parties dispute which facts should be considered on appeal. Avery argues that, because the district court did not resolve Avery's factual challenge to 3M's complaint, it would be improper for this court to determine the disputed facts in the first instance. Specifically, Avery alleges that the district court failed to resolve two key factual disputes: (1) whether 3M proved

that Sardesai stated that 3M "may infringe," that "licenses are available," and that Avery would "send claim charts"; and (2) whether those conversations were subject to a confidentiality agreement precluding their use as a basis to support a declaratory judgment action. Thus, argues Avery, even if the facts alleged by 3M support finding a case or controversy, at most 3M is entitled to a remand for the district court to resolve the parties' factual disputes and determine if jurisdiction is proper under those facts.

3M responds that it would be improper to remand this case for additional fact finding. Specifically, 3M argues that it is "not truly disputed" what Sardesai communicated to Rhodes over the telephone. Reply Br. 3M Co. at 24, 2011 WL 4071492. With that issue resolved, argues 3M, the facts show the existence of a case or controversy.

We agree with Avery that it is improper for us to determine factual issues in the first instance on appeal. The disputed facts in this case—the content of and confidentiality of the discussions between Rhodes and Sardesai—are central to the jurisdictional analysis. Thus, finding those facts in the first instance would overstep our bounds as a reviewing court and we cannot resolve the parties' factual disputes on appeal. The case must therefore be remanded.

### III.

The district court held that it lacked jurisdiction because, even taking the facts alleged by 3M as true, there was not a justiciable controversy between the parties. We disagree. As discussed below, the facts alleged by 3M, if true, would be sufficient to give rise to a case or controversy under the Declaratory Judgment Act. However, "[o]nce challenged, allegations alone are insufficient to meet the complainant's burden" to establish jurisdiction.

*Cedars-Sinai*, 11 F.3d at 1584. The district court must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it "may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* The district court on remand must find the salient facts and, after finding those facts, determine whether those facts support a conclusion that a case or controversy between 3M and Avery exists.

Challenging the district court's dismissal of its declaratory judgment action, 3M argues that all of the circumstances demonstrate a substantial, real, and immediate controversy between 3M and Avery. 3M specifically asserts that the 2009 discussions between Rhodes and Sardesai demonstrate the existence of such a controversy because, in those discussions, Avery accused a specific 3M product of infringing the Heenan patents, 3M denied infringement and refused to accept a license to the Heenan patents, and Avery then stated that it would send 3M claim charts. In addition, 3M points to the parties' history of patent litigation, Avery's initiation of reissue proceedings for the Heenan patents, and Avery's refusal to grant 3M a covenant not to sue. Finally, 3M argues that the district court legally erred when it concluded that the passage of time between the parties' discussions and 3M's filing of the declaratory judgment complaint counseled against concluding that the parties' dispute was real and immediate.

Avery responds that the telephone conversations between Rhodes and Sardesai, even as alleged by 3M, were informal, equivocal, and did not include any threat of litigation. Regarding the surrounding circumstances, Avery argues that 3M's subjective fears based on Avery's decision to reissue the Heenan patents and its prior litigation conduct in unrelated patent cases are irrelevant to establishing declaratory judgment jurisdiction. Simi-

larly, Avery argues that its refusal to grant an unconditional and unconstrained covenant not to sue to 3M cannot be used to manufacture declaratory judgment jurisdiction. Finally, Avery argues that the district court properly considered 3M's more than one-year delay in filing suit as weighing against finding a case or controversy.

We agree with 3M that the facts alleged in its complaint, if found by the district court on remand, would demonstrate the existence of a case or controversy under the Declaratory Judgment Act. To establish the existence of a "definite and concrete" dispute, more is required than "a communication from a patent owner to another party, merely identifying its patent and the other party's product line." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). How much more is required is determined on a case-by-case analysis. In *Hewlett-Packard*, for example, we concluded that a case or controversy existed based upon the patentee's letters to the declaratory judgment plaintiff that identified the patent as "relat[ing]" to a specific product line, imposed two-week deadlines to respond, and insisted that the declaratory judgment plaintiff not file suit. *Id.* at 1362–63. And, of course, if "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993).

Here, 3M's complaint alleges facts indicating that Avery effectively charged 3M with infringement of the Heenan patents. According to 3M's complaint, Avery's Chief Intellectual Property Counsel, Sardesai, telephoned 3M's Chief Intellectual Property Counsel, Rhodes, and expressly stated that a specific product, the Diamond Grade DG³, "may infringe" the Heenan patents and that

"licenses are available." Two days later, Rhodes telephoned Sardesai and responded that 3M had rejected Avery's license offer. During that call, Sardesai responded that Avery had analyzed the Diamond Grade DG[3] with regard to the Heenan patents and that Avery would provide 3M with claim charts.

Those communications, if found by the district court, would be sufficient to constitute a case or controversy between 3M and Avery. That Sardesai employed the term "may infringe" instead of "does infringe" is immaterial in light of his offer to license the Heenan patents, his representation that Avery had analyzed the Diamond Grade DG[3], and his statement that claim charts would be forthcoming. *See Hewlett-Packard*, 587 F.3d at 1362 (explaining that the purpose of a declaratory judgment action cannot be defeated by avoiding "magic words" and noting that, post-*MedImmune*, it is implausible to expect that correspondence from a patentee would "identify specific claims, present claim charts, and explicitly allege infringement").

To counter 3M's allegations, Avery, relying on our decision in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010), argues that the communications were passing remarks made informally over the telephone, not in a formal cease-and-desist letter with prescribed deadlines, and that these facts weigh against concluding that jurisdiction is proper. We disagree. In *Innovative Therapies*, all communications between the parties were initiated by an employee of the declaratory judgment plaintiff and were directed to employees of the patentee who lacked relevant decision-making authority and had not evaluated the potentially infringing device. 599 F.3d at 1381. The district court described the declaratory judgment plaintiff's efforts as a "sub rosa" effort to create jurisdiction, a conclusion we

affirmed, holding that "the indirection reflected in these conversations did not produce a controversy of such 'immediacy and reality' as to require the district court to accept declaratory judgment jurisdiction." *Id.*

This case is markedly different from *Innovative Therapies*. Under the facts alleged in this case, Sardesai initiated the communications and, without provocation, asserted Avery's patent rights and represented that claim charts were forthcoming. There is no allegation that Sardesai, as Avery's Chief Intellectual Property Counsel, lacked the authority to make those assertions. Nor is there any indication that the communications were part of an attempt to manufacture jurisdiction by 3M.

Similarly, that Avery might not have imposed a deadline to respond in its communications does not weigh against finding a case or controversy. While a patentee's imposition of a deadline is a circumstance to consider under a *MedImmune* analysis, *Hewlett-Packard*, 587 F.3d at 1362–63, we have found that declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines, *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348–49 (Fed. Cir. 2011); *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 653 F.3d 1329, 1345–46 (Fed. Cir. 2011) ("*AMP*").

Here, after 3M denied infringement, it was Avery's turn to act—it represented that claim charts were forthcoming—and, in that context, it would make little sense if a deadline to respond were imposed on 3M. In addition, by stating that it had analyzed the Diamond Grade DG[3] and would send 3M claim charts, Avery perhaps signaled its intent to escalate the dispute. Thus, the lack of deadlines in this case would not favor a conclusion that a case or controversy is lacking.

The remaining circumstances would not strongly weigh in either direction toward concluding that 3M has proven the existence of a case or controversy. On the one hand, while "[p]rior litigious conduct is one circumstance to be considered," a history of litigation "concerning different products covered by unrelated patents is not the type of pattern of prior conduct that makes reasonable an assumption" that the patentee will file suit regarding a new or different product. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008); *see also Innovative Therapies*, 599 F.3d at 1382. On the other hand, there was much prior litigation between the parties and one lawsuit was related to retroreflective sheeting products. We note that the prior lawsuit, which Avery filed over a decade ago and has long since been settled, involved different products and patents from this case. Thus, the prior litigious conduct is equivocal in resolving the question.

We do agree with Avery that its decision to initiate reissue proceedings for the Heenan patents would not weigh strongly in favor of finding a case or controversy. The purpose of reissue proceedings is to correct errors in an issued patent, *In re Bennett*, 766 F.2d 524, 528 (Fed. Cir. 1985) (en banc), and, in this case, even with the unrelated litigation between the parties, there is no evidence that an objective observer in 3M's position would conclude that Avery initiated reissue proceedings for the purpose of bringing a lawsuit against 3M accusing the Diamond Grade DG3 product of infringement.

We disagree, however, with Avery's assertion that the district court properly concluded that 3M's delay in filing suit weighed against finding subject matter jurisdiction in this case. It is true that "[i]n many cases a controversy made manifest by a patentee's affirmative assertion of its patent rights will dissipate as market players and prod-

ucts change." *AMP*, 653 F.3d at 1346. But the passage of time does not counsel against finding declaratory judgment jurisdiction if "the relevant circumstances" surrounding the patentee's assertion of patent rights "have not changed despite the passage of time." *Id.* Indeed, in *AMP*, we concluded that an over ten-year passage of time between the patentee's assertion of its rights and the filing of a declaratory judgment action did not dissipate the existing controversy. *Id.* In reaching that conclusion, we explained that the patentee's enforcement activity caused the declaratory judgment plaintiff to cease performing the accused activities, the parties had not altered their respective positions, the declaratory judgment plaintiff was "still laboring under" the threat of infringement liability, and nothing in the record suggested that any institution contacted by the patentee had successfully attempted to compete with it. *Id.*

In this case, the relevant circumstances surrounding Avery's assertion of its patent rights appear to have remained unchanged during the over one-year period between Avery's assertion of patent rights and 3M's filing of the declaratory judgment complaint. There is no allegation that the Diamond Grade DG³ product has changed in relation to the Heenan patents or that either 3M or Avery altered its respective position. Moreover, we note that, as part of a pre-filing investigation, it takes time to review a set of asserted patents, the record generated before the PTO, and the accused products before a potential infringer can make an informed decision to file a declaratory judgment complaint. Thus, we would be disinclined to hold that the case or controversy between the parties sufficiently dissipated in the more than one-year passage of time between Avery's assertion of patent rights and 3M's filing of the declaratory judgment complaint.

Finally, the parties dispute what effect Avery's failure to provide a covenant not to sue should have on the jurisdictional analysis. We have explained that "although a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination [of declaratory judgment jurisdiction], it is not dispositive." *Prasco*, 537 F.3d at 1341 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993)). However, if the district court on remand concludes that Avery's communications with 3M, considering all the facts and circumstances as pled by 3M, are sufficient to raise a case or controversy, it might also conclude that Avery's failure to provide 3M with a covenant not to sue did not, at the very least, lessen that existing controversy. *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1381 (Fed. Cir. 2011) (concluding that, under the circumstances, the patentee's refusal to grant a covenant not to sue provided "a level of additional support for our finding that an actual controversy exists").

In sum, the facts as alleged by 3M, if found by the district court, would demonstrate the existence of an ongoing case or controversy under the Declaratory Judgment Act. Under the Supreme Court's decision in *MedImmune*, the basic question for declaratory judgment jurisdiction is whether there is "a substantial controversy" between parties "having adverse legal interests" that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127 (quoting *Md. Cas.*, 312 U.S. at 273). That test would be satisfied here because 3M filed its declaratory judgment complaint reasonably promptly after Avery, a direct competitor with a history of enforcing its patent rights against 3M, asserted its rights in the Heenan patents against 3M and accused a specific 3M product of infringement.

IV.

Having concluded that the facts in 3M's complaint, if found by the district court, demonstrate a case or controversy, we now consider how the case should be postured on remand. As explained above, the district court should resolve Avery's factual challenges and determine, in light of those factual findings, if 3M has proven the existence of a case or controversy under the Declaratory Judgment Act.

In addition to fact-finding issues, the parties seek a ruling on whether the district court would abuse its discretion if on remand it declined to exercise jurisdiction over 3M's declaratory judgment action, should it determine that such jurisdiction exists. We decline, however, to opine on a discretionary decision that the district court has yet to make, especially because that decision will ultimately be based on a set of facts that the district court has yet to find. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479 (Fed. Cir. 1998).

CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is

**VACATED AND REMANDED**