# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3057

_____

U.S. Water Services, Inc.

*Plaintiff - Appellant*

Global Process Technologies, Inc.; Roy Johnson

*Counter Defendants - Appellants*

v.

ChemTreat, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 13, 2015
Filed: July 24, 2015

_____

Before RILEY, Chief Judge, MURPHY and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

In April 2011, while its patent application was pending with the United States Patent and Trademark Office (USPTO), U.S. Water Services, Inc. sued its competitor,

ChemTreat, Inc. for misappropriation of trade secrets. On October 18, 2011, the USPTO issued U.S. Patent No. 8,039,244 ('244 patent). Three days before U.S. Water and ChemTreat settled the misappropriation claim, ChemTreat filed counterclaims against U.S. Water, Global Process Technologies, Inc. and Roy Johnson (collectively, counterclaim defendants) requesting declaratory judgments of noninfringement and invalidity of the '244 patent.[1] The counterclaim defendants moved to dismiss the counterclaims for lack of subject matter jurisdiction, and ChemTreat moved for summary judgment of noninfringement. The district court[2] denied the counterclaim defendants' motion to dismiss and later granted ChemTreat's subsequent motion for summary judgment as to the noninfringement counterclaim and dismissed the invalidity counterclaim. The counterclaim defendants appeal. We affirm the district court's well-reasoned judgment.

## I.    BACKGROUND

### A.    Facts

In its second amended complaint (complaint), U.S. Water stated it "sell[s] water treatment and purification equipment, materials, and services," especially "to ethanol process technologies." U.S. Water claimed it "developed a method to reduce the formation of insoluble scale deposits during the production of ethanol" using an

---

[1]The cover page of the '244 patent lists Roy Johnson and Paul Young as inventors and Global Process Technologies, Inc. as an assignee. Although the parties do not cite to a license agreement in the record, the parties agree U.S. Water is the "exclusive licensee" of the '244 patent, and the counterclaim defendants "own[] and/or control[]" the '244 patent. The counterclaim defendants explained to the district court, "During the application process, Dr. Young assigned his ownership of the patent to U.S. Water, which in turn assigned its interest to its corporate parent, Global Process Technologies, Inc. Mr. Johnson retains his one-half undivided ownership interest in the '244 Patent."

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

enzyme, phytase, in its "pHytOUT® system." U.S. Water alleged, among other things, ChemTreat persuaded one of U.S. Water's business acquaintances to breach a non-disclosure agreement and disclose U.S. Water's "pHytOUT® Trade Secrets" such that ChemTreat was able to begin selling its own phytase product, PE1000, modeled on U.S. Water's product, to U.S. Water's ethanol industry customers.

At the time U.S. Water filed the complaint, the application for what would become the '244 patent was pending with the USPTO. U.S. Water attached the application to the complaint and described its scientific claims in some detail. The complaint explained, "U.S. Water adopted the brand 'pHytOUT®' to use in connection with the sale and offer for sale to its customers and the trade of the system described in the pHytOUT® [patent] Application." The complaint alleged ChemTreat "misappropriat[ed] the pHytOUT® Trade Secrets," which, together with "the pHytOUT® invention" disclosed in the patent application, form "the pHytOUT™ system."[3]

In April 2011, Johnson, Chief Innovation Officer at U.S. Water, sent an email to a customer who had also been approached by ChemTreat, remarking,

> I need to speak with you later today about the ChemTreat 'offering' and what has happened. They are on very thin ice & are putting people at risk. While [U.S. Water's European Patent Office] patent application has been allowed, the USPTO patent prosecution remains painfully slow in an underfunded agency. The consequences gets [sic] too many attorneys involved.

A week later, U.S. Water sent an email to its phytase supplier, who was also supplying phytase to ChemTreat, declaring,

---

[3]The complaint refers both to a "pHytOUT™ system" and a "pHytOUT® system."

We have been granted an EU patent and anticipate the USPTO patent soon. . . . Now we have a competitor going around our patent application buying your . . . product in violation of our supply agreement and what would appear to be a much lower price. . . . This is a very serious issue to us and we are not seeing much openness or response from you . . . . We have filed a lawsuit against this competitor regarding misappropriation of trade secrets, and misrepresenting our product. We are filing additional actions against them today.[4]

After receiving the email, the phytase supplier told U.S. Water it would "walk[] away from ChemTreat" and told ChemTreat it "will not be able to supply [ChemTreat] with phytase" because "doing so would lead to possible infringements in [U.S. Water's] patented propositions to the market place."

In a deposition, one of ChemTreat's customers testified that a particular person at U.S. Water had told him about the '244 patent application at an industry trade workshop. The customer responded it was "probably fair" to say "the only reason" his employer stopped a trial run of ChemTreat's phytase product, PE1000, was because U.S. Water told the customer that U.S. Water "had a patent on that application" of phytase.

## B. Procedural History

U.S. Water, a citizen of Minnesota, sued ChemTreat, a citizen of Virginia, in the district court, asserting Minnesota state law claims of misappropriation of trade secrets, among other things, and invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

---

[4]At oral argument, the counterclaim defendants alleged the additional action to be filed "today" was merely the first amended complaint in the trade secret case, filed four days later.

On the day the '244 patent issued, ChemTreat moved to amend its answer to add counterclaims, which U.S. Water initially opposed. The district court eventually granted ChemTreat's new, unopposed motion to file counterclaims. Three days before U.S. Water and ChemTreat settled the misappropriation claim, which disposed of all claims in U.S. Water's complaint, ChemTreat filed the counterclaims requesting declaratory judgments of noninfringement and invalidity of the '244 patent.

The counterclaim defendants moved to dismiss the counterclaims for lack of subject matter jurisdiction, and ChemTreat moved for summary judgment of noninfringement. The district court heard argument on the motions. Finding subject matter jurisdiction existed, the district court denied the counterclaim defendants' motion to dismiss and denied without prejudice ChemTreat's motion for summary judgment. After additional limited discovery, the district court granted ChemTreat's motion for summary declaratory judgment as to noninfringement and dismissed without prejudice ChemTreat's invalidity counterclaim.

## C.    Appellate Jurisdiction

The counterclaim defendants appealed to the United States Court of Appeals for the Federal Circuit. After full briefing and argument, the Federal Circuit concluded it lacked appellate jurisdiction because U.S. Water's initial complaint did not state a cause of action arising under the patent laws. See 28 U.S.C. §§ 1295(a)(1), 1338(a) (2011).

While ChemTreat's counterclaims do allege patent law claims, U.S. Water initiated the action on April 12, 2011, before the Leahy-Smith America Invents Act, 125 Stat. 284 (2011) (AIA), took effect, so the counterclaims independently did not establish appellate jurisdiction for the Federal Circuit. See Wawrzynski v. H.J. Heinz Co., 728 F.3d 1374, 1378-79 (Fed. Cir. 2013) (determining the AIA confers appellate jurisdiction on the Federal Circuit for compulsory counterclaims filed in actions

commenced after September 16, 2011). The Federal Circuit transferred the appeal to the Eighth Circuit. This court has appellate jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

In the realm of patent law, we rely on the Federal Circuit's precedent for persuasive guidance. See, e.g., Schinzing v. Mid-States Stainless, Inc., 415 F.3d 807, 811 (8th Cir. 2005).

### A. Subject Matter Jurisdiction

"The threshold issue is whether the district court had subject matter jurisdiction. This court reviews subject matter jurisdiction de novo." Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins., 675 F.3d 1095, 1098 (8th Cir. 2012); see also Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1254 (Fed. Cir. 2002) ("The determination of whether an actual controversy exists under the Declaratory Judgment Act in a patent case is a question of law that we review de novo."). "If the district court resolves disputed factual issues, its findings are reviewed for clear error." ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011); accord Vanguard, 304 F.3d at 1254. ChemTreat bears the burden to show subject matter jurisdiction existed when it filed its counterclaims. See, e.g., ABF Freight, 645 F.3d at 958; accord Powertech Tech. Inc. v. Tessera, Inc., 660 F.3d 1301, 1306 (Fed. Cir. 2011).

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in § 2201 'refers to the type of Cases and Controversies that are justiciable under Article III.'" Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).

### 1. Reasonable Apprehension of Suit

The counterclaim defendants moved to dismiss ChemTreat's counterclaims, arguing the district court "lack[ed] subject-matter jurisdiction over ChemTreat's claim for a declaratory judgment of non-infringement because the Counterclaim Defendants have not asserted the '244 Patent against ChemTreat or its customers." The district court concluded subject matter jurisdiction exists and denied the motion, relying principally on two cases from the Federal Circuit, both of which address the relationship between trade secrets and patents.[5]

First, in Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953 (Fed. Cir. 1987), after Releasomers filed suit in state court alleging Goodyear had misappropriated trade secrets, the USPTO issued two patents to Releasomers based on the same technology involved in the state action. See id. at 954. Goodyear then filed a complaint in federal court seeking a declaratory judgment of invalidity and noninfringement of Releasomers's patents. See id. The federal district court dismissed Goodyear's suit for lack of subject matter jurisdiction and granted summary judgment to Releasomers. See id. Goodyear appealed to the Federal Circuit. See id.

---

[5]See AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp., 663 F.3d 966, 972-73 (8th Cir. 2011) ("[E]xistence of a trade secret is determined by the value of a secret, not the merit of its technical improvements. Unlike patent law, which predicates protection on novelty and nonobviousness, trade secret laws are meant to govern commercial ethics."); see also Accent Packaging, Inc. v. Leggett & Platt, Inc., 707 F.3d 1318, 1329 (Fed. Cir. 2013) ("As a matter of law, any specifications and tolerances disclosed in or ascertainable from the asserted patents became publicly available . . . when the . . . patent application was published and, as such, could not constitute a trade secret [a few months later] when [the defendant] is alleged to have engaged in misappropriation."); On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer, 386 F.3d 1133, 1141 (Fed. Cir. 2004) ("After a patent has issued, the information contained within it is ordinarily regarded as public and not subject to protection as a trade secret.").

The Federal Circuit laid out its two-pronged test for determining subject matter jurisdiction in a declaratory judgment patent case, as follows:

First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.

Id. at 955. The Goodyear court found Releasomers's misappropriation suit created such reasonable apprehension for Goodyear, deciding that the fact the state court misappropriation claim did not name the patents at issue was irrelevant because "that proceeding involves trade secret misappropriation of the same technology covered by the Releasomers' . . . patents. Accordingly, the [litigious] conduct of Releasomers, in itself, is sufficient to give Goodyear an objective inference of an impending infringement suit now that the patents have issued" and "shows a willingness to protect that technology." Id. at 955-56. The Federal Circuit decided "an *express* threat of litigation" was not essential "to meet the requirements of an actual case or controversy. Such a requirement would utterly defeat the purpose of the Declaratory Judgment Act, which in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Id. at 956.

Similarly, in Vanguard, after being sued for misappropriation of trade secrets in the Northern District of Alabama, Vanguard brought an action seeking a declaratory judgment of invalidity and noninfringement of PEAT's patent. See Vanguard, 304 F.3d at 1252. The district court in the declaratory action granted PEAT's motion to dismiss for lack of subject matter jurisdiction. See id. at 1252-53. Vanguard appealed to the Federal Circuit. See id. at 1253.

The Federal Circuit addressed the "reasonable apprehension" declaratory judgment prong, as in Goodyear. See id. at 1254-55. The court reiterated, "Although

the best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required." Id. at 1254. Finding the case "indistinguishable from . . . Goodyear," the Federal Circuit stated, "PEAT sued Vanguard for . . . misappropriation of trade secrets regarding the same technology in the same district court. The . . . district court found no actual controversy based on PEAT's repeated statement that it does not intend to sue Vanguard for patent infringement and its ongoing failure to bring such a suit." Id. at 1255 (quotation omitted). But the Federal Circuit emphasized an objective standard, stating, "[A] patentee's present intentions do not control whether a case or controversy exists. The appropriate inquiry asks whether Vanguard had a reasonable apprehension that PEAT would sue it for patent infringement in the future." Id. (internal citation omitted). Of particular importance was the patentee's communications not to the potential infringer, but to the potential infringer's customers: "By filing the earlier lawsuit and informing Vanguard's clients that Vanguard is using the PEAT technology without a license, PEAT has shown 'a willingness to protect that technology.' Filing a lawsuit for patent infringement would be just another logical step in its quest to protect its technology." Id. (quoting Goodyear, 824 F.2d at 956).

After Goodyear and Vanguard, the United States Supreme Court in MedImmune "rejected [the Federal Circuit's] prior, more stringent standard for declaratory judgment standing insofar as it required a 'reasonable apprehension of imminent suit.'" Arris Grp., Inc. v. British Telecommc'ns PLC, 639 F.3d 1368, 1373 (Fed. Cir. 2011) (quoting MedImmune, 549 U.S. at 132 n.11). "Under the [Supreme] Court's new standard, an Article III case or controversy exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id. at 1373 (quoting MedImmune, 549 U.S. at 127).

"While the Supreme Court rejected the reasonable apprehension of suit test as the sole test for jurisdiction, it did not completely do away with the relevance of a reasonable apprehension of suit." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008). The test is still relevant because, "following MedImmune, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." Id. "Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." Id. at 1341.

A recent post-MedImmune Federal Circuit case, issued after the district court's decision in this case, confirms that "a showing [of reasonable apprehension of suit] remains sufficient to establish jurisdiction." Arkema Inc. v. Honeywell Int'l, Inc., 706 F.3d 1351, 1358 n.5 (Fed. Cir. 2013). Arkema approvingly cites Goodyear and Vanguard and states the declaratory judgment defendant need not "directly accuse[ the declaratory judgment plaintiff] of potential indirect infringement. Even under the now-discarded reasonable apprehension of suit test, it was well established that a sufficient controversy existed for declaratory judgment jurisdiction where the patentee had accused the declaratory judgment plaintiff of misappropriating the same technology in related litigation." Id. at 1358 (footnote omitted) (citing Goodyear, 824 F.2d at 955, and Vanguard, 304 F.3d at 1255); see also Danisco U.S. Inc. v. Novozymes A/S, 744 F.3d 1325, 1330 (Fed. Cir. 2014) (concluding "the standard for finding a justiciable controversy [wa]s satisfied" even though the patent holder "had not affirmatively accused [the declaratory judgment plaintiff's] products of infringing the issued . . . patent," because "that fact alone is not dispositive of whether an actual controversy exists," "and the Supreme Court has repeatedly found the existence of an actual case or controversy even in situations in which there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights"); cf. Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the same parties is relevant

in determining whether a justiciable declaratory judgment controversy exists on other related patents.").[6]

In this case, the district court, relying on Goodyear and Vanguard, concluded U.S. Water's suit alleging misappropriation of trade secrets, filed one month after ChemTreat began selling its phytase product, was an important factor in determining whether ChemTreat had a reasonable apprehension of suit. On appeal, the counterclaim defendants argue the misappropriation claim should not be considered in the evaluation of subject matter jurisdiction because U.S. Water "was asserting different legal rights—contractual rights with prospective customers, active customers, and its phytase supplier." The counterclaim defendants contend, "The presumption is erroneous that prior litigation *of any kind* between the same parties that involves the same technology is sufficient to establish declaratory judgment jurisdiction." (Emphasis added). But U.S. Water's complaint does not equal "prior litigation of any kind"—U.S. Water pled a misappropriation of trade secrets claim, which is the same claim brought in Goodyear and Vanguard. See Arkema, 706 F.3d at 1358.

The counterclaim defendants also argue the misappropriation claim was not based on the same technology as the invention taught by the '244 patent. They maintain U.S. Water's "references to the '244 Patent in its trade secrets complaint explicitly differentiated the patented method from the claimed trade secrets." U.S.

---

[6]The counterclaim defendants submitted a letter to this court pursuant to Federal Rule of Appellate Procedure 28(j) citing a case issued a year before, Microsoft Corp. v. DataTern, Inc., 755 F.3d 899 (Fed. Cir. 2014), where the Federal Circuit found it lacked jurisdiction over Microsoft's challenge to one of DataTern's patents. See id. at 903. Microsoft is inapposite here, because the patent holder, DataTern, did not sue Microsoft for misappropriation of trade secrets before Microsoft filed motions for declaratory judgment of noninfringement and invalidity. See id. at 902-03.

-11-

Water's complaint does not support this conclusion. First, U.S. Water attached to the complaint the application for what would become the '244 patent and described its claims in detail.

Second, the complaint states, "U.S. Water adopted the brand 'pHytOUT®' to use in connection with the sale and offer for sale to its customers and the trade of the system described in the pHytOUT® [patent] Application." The complaint alleges ChemTreat misappropriated "the pHytOUT® Trade Secrets," which U.S. Water was obliged to distinguish from "the pHytOUT® invention" disclosed in its patent application, since the patent application is publicly available and thus could not contain a trade secret. See Minn. Stat. § 325C.01, subd. 5(i) (defining a "trade secret" as "information" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"). As the district court recognized, the declaratory judgment defendants in Goodyear and Vanguard would have had to make the same distinction, yet the Federal Circuit still found the same technology was involved in both the misappropriation claim and asserted patent infringement claims in those cases.

At the same time, U.S. Water defines "the pHytOUT® system" to include both "the pHytOUT® Trade Secrets" and "the pHytOUT® invention." The complaint connects ChemTreat with the whole system, not just the trade secrets, contending, "ChemTreat does not have the ability or expertise to support the pHytOUT® system at [a U.S. Water customer's] ethanol plant and would not have understood the specific benefits and consequences of the pHytOUT® process if ChemTreat had not obtained unlawful access to the pHytOUT® Trade Secrets," and "[b]y obtaining access to the pHytOUT® Trade Secrets, ChemTreat on information and belief acquired in approximately four months or less know-how and expertise in the pHytOUT® system that is virtually identical to U.S. Water's and that could not have been acquired by proper means."

-12-

In its originally filed complaint, U.S. Water declared that the pHytOUT™ system—which would also include the trade secrets—would be protected when its pending patent issued: "In October of 2007, U.S. Water filed Application No. 11/873,630 with the [USPTO] seeking a patent to protect the system its employees have invented for the reduction of scale deposits." U.S. Water implies as much in the operative second amended complaint at issue: "The pHytOUT® Application describes a system for the reduction of scale deposits. . . . U.S. Water adopted the brand 'pHytOUT®' to use in connection with the sale and offer for sale to its customers and the trade of the system described in the pHytOUT® Application."

U.S. Water proposes, "The claims in the patent were only relevant to the case because they were *not* among the trade secrets that [U.S. Water] accused ChemTreat of misappropriating," and its complaint was "carefully drafted to underscore that [U.S. Water] was accusing ChemTreat of the misappropriation of trade secrets and to distinguish [U.S. Water]'s secret and confidential information from publicly available information in the patent application or the file wrapper." We reject U.S. Water's attempt to distance itself from the connections it pointedly made in its complaint about the elements of its "pHytOUT® system." We conclude, as ChemTreat states it, that the complaint "expressly noted the close interrelationship between U.S. Water's purported trade secret and patent rights," and "U.S. Water expressly equated its pHytOUT® 'system' with its trade secrets and patent rights." The district court did not err by finding the misappropriation claim involved the same technology as the '244 patent.

In its jurisdiction order, issued before Arkema, the district court was not willing to go as far as Goodyear and Vanguard might suggest—that is, to conclude a prior misappropriation claim categorically establishes a reasonable apprehension of an infringement suit after a patent on the same technology has issued. See Goodyear, 824 F.2d at 955; Vanguard, 304 F.3d at 1255. Yet the district court found that when combined with the counterclaim defendants' other actions, a reasonable apprehension

was present. Specifically, these include (1) Johnson's April 2011 email to U.S. Water's customer; (2) U.S. Water's email to its phytase supplier; and (3) U.S. Water informing ChemTreat's customer about U.S. Water's patent, leading to the customer's decision not to continue a trial of ChemTreat's PE1000 phytase product.

The counterclaim defendants assert these communications show they merely were trying to protect their contractual rights with their customers and phytase supplier. But the cited exchanges, while sometimes alluding to contractual relationships, invoke what the counterclaim defendants hoped would evolve into patent rights, even though the counterclaim defendants did not explicitly threaten patent litigation. See Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009) ("The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.' . . . [I]t is implausible (especially after MedImmune and several post MedImmune decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement."). As the magistrate judge in this case[7] wrote three years ago, addressing the same issue, "U.S. Water . . . has done more than just communicate with ChemTreat's . . . customers without directly accusing ChemTreat of infringement. U.S. Water's litigation activities reveal both its hostile stance to ChemTreat's competing product and its willingness to protect aggressively its technology, making patent litigation the next logical, if not inevitable, step." See Vanguard, 304 F.3d at 1255.

Before the district court, the counterclaim defendants stated that if the district court were to "construe[] the '244 Patent in the manner" suggested by the '244 patent's attorney prosecutor, then "ChemTreat would be a contributory infringer, and

_____

[7]The Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

-14-

its customers direct infringers, of the '244 Patent, under the doctrine of equivalents" and "ChemTreat may be inducing infringement." See 35 U.S.C. § 271(a)-(c). In addition, as the district court reasoned,

> Notably, in its brief in opposition to ChemTreat's motion for leave to assert its counterclaims, U.S. Water stated that it might bring a patent action against ChemTreat if U.S. Water were to discover that an ethanol plant was using PE1000. In other words, U.S. Water has admitted that, as soon as ChemTreat is successful in finding a customer for PE1000, U.S. Water may sue ChemTreat. U.S. Water cannot have its cake and eat it too. It cannot, on the one hand, scare off ChemTreat customers by wafting allusions to patents and litigation into conversations about PE1000, and then, on the other hand, argue that ChemTreat cannot bring a declaratory-judgment action because ChemTreat does not have any customers.

(Internal citation omitted). ChemTreat responds, and offers evidence in support, "This confirmed ChemTreat's apprehension of suit because ChemTreat was already offering for sale and selling PE1000 at that time."

Evaluating the "totality of [the] circumstances," Prasco, 537 F.3d at 1341, we conclude the district court did not err in finding the misappropriation action, together with U.S. Water's statements to its customers and supplier, produced an objective, "reasonable apprehension of suit," Vanguard, 304 F.3d at 1254, and therefore did not err in concluding declaratory judgment subject matter jurisdiction existed in this action, see Arkema, 706 F.3d at 1358 n.5.

### 2.    Advisory Opinion

In the district court, the counterclaim defendants "t[oo]k[] no position in response to ChemTreat's requested motion for summary judgment of noninfringement," only repeating their argument that the district court lacked subject

matter jurisdiction over ChemTreat's counterclaims.[8]   Here, the counterclaim defendants argue the district court's summary judgment opinion is a prohibited advisory opinion because ChemTreat cannot establish it directly or indirectly infringes the '244 patent.

The Supreme Court cautions against "'an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, 549 U.S. at 127 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)).  Rather, "[t]he dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" Arris, 639 F.3d at 1373 (quoting MedImmune, 549 U.S. at 127).  In Arris, as here, the declaratory judgment defendant "surprisingly appear[ed] to contend that . . . the declaratory judgment plaintiff['s burden] includes the burden of presenting evidence that [its] actions indirectly infringe the patents-in-suit." Id. at 1380.  As explained by the Federal Circuit,  "Ironically, [the declaratory judgment defendant] overlook[ed] the fact that the very purpose for an accused infringer to bring a declaratory judgment action is to seek a judicial determination that a coercive claim by the patent holder would *not* succeed on the merits." Id. (internal marks and citation omitted).  Here, to establish standing, ChemTreat must show "an actual case or controversy exists," but "that burden does not extend to showing that the [declaratory judgment] defendant holds meritorious positions on the issues in controversy." Id. (internal marks and citation omitted).  "To require declaratory judgment plaintiffs to allege or show that their products or processes *are* infringements would limit the judgments they seek to declarations of invalidity or unenforceability.  The Declaratory Judgment Act is not so limited." Id. (internal marks and citation omitted).

---

[8]The district court stated, "U.S. Water's decision not to contest ChemTreat's motion on the merits is wise, as it is absolutely clear that ChemTreat neither directly infringes, nor induces nor contributes to infringement, of the '244 patent."

The Arris court also noted that where, as here, the declaratory judgment defendant "refus[es] to grant [the declaratory judgment plaintiff] a covenant not to sue, this provides a level of additional support for [the] finding that an actual controversy exists." Id. at 1381; cf. Already, LLC v. Nike, Inc., 568 U.S. ___, ___, 133 S. Ct. 721, 725, 732 (2013) (holding "a covenant not to enforce a trademark against a competitor's existing products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid"); Cisco Sys., Inc. v. Alberta Telecommc'ns Research Ctr., 538 F. App'x 894, 898 (Fed. Cir. 2013) (unpublished) (finding that the fact the declaratory judgment defendant had offered to the declaratory plaintiff—albeit not to the plaintiff's customers—a covenant not to sue for patent infringement further evidence of a lack of a justiciable case or controversy).

We conclude the district court issued no advisory opinion here.

## B.    Attorney Fees

ChemTreat filed a motion for attorney fees with this court, claiming the counterclaim defendants' appeal was frivolous. "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "Under Rule 38, an appeal is frivolous 'when the result is obvious or when the appellant's argument is wholly without merit.'" Misischia v. St. John's Mercy Health Sys., 457 F.3d 800, 806 (8th Cir. 2006) (quoting Newhouse v. McCormick & Co., 130 F.3d 302, 305 (8th Cir. 1997) (order)).

The result here was not obvious, and the counterclaim defendants' arguments on appeal were not wholly without merit. Even considering the fact Arkema, which arguably strengthened ChemTreat's case, was issued after the district court's opinion but before briefing had begun in this appeal, the counterclaim defendants still had a

-17-

nonfrivolous, if unsuccessful, argument.  We deny ChemTreat's motion for attorney fees.

## III.   CONCLUSION

We affirm the judgment of the district court for the reasons stated in its well-reasoned opinion.

_____