United States Court of Appeals
For the Eighth Circuit
No. 24-2741

Thunderhead of Ankeny, Inc.

*Plaintiff - Appellant*

v.

Chicken Bones of Kearney, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: June 11, 2025
Filed: July 8, 2025

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Nearly twenty years ago, David Anders sold his equity in Chicken Bones of Kearney, Inc., which ran a sports bar and grill called the Chicken Coop. But Anders decided to operate another Chicken Coop, and litigation with Chicken Bones ensued over the new restaurant's alleged use of Chicken Coop trade secrets, trademarks, and trade dress. In the resulting settlement, he received a limited license to use that

intellectual property. He then opened or acquired several other Chicken Coops, one of which he operated through Thunderhead of Ankeny, Inc., a company he wholly owned. Convinced that Anders had not complied with the license during this expansion, Chicken Bones sued him, along with Thunderhead, in state court for breach of the settlement agreement. It also asserted other state-law claims, including a claim that Thunderhead unjustly enriched itself by misappropriating its trade secret Chicken Coop recipes and infringing its Chicken Coop trademarks and trade dress. Thunderhead, in turn, sued Chicken Bones in federal court. It sought declarations that it did not infringe the Chicken Coop trade dress and that the Chicken Coop trade secrets, trademarks, and trade dress are invalid. Additionally, it requested declarations that the unjust enrichment claim was untimely and that any trade secrets claim would be untimely, too. The district court[1] concluded that it lacked jurisdiction and dismissed the suit. Because we agree with that conclusion, we affirm.

The parties assume that the district court had jurisdiction only if this suit presents a federal question, *see* 28 U.S.C. § 1331, and we will do the same. Were this an ordinary case, that would mean that a federal claim must appear on the face of Thunderhead's complaint. *See Oglala Sioux Tribe v. C & W Enters.*, 487 F.3d 1129, 1131 (8th Cir. 2007). But because this is an action for declaratory relief, and because such an action "is merely a substitute for a more traditional action for damages or injunctive relief," we must imagine the traditional action that presents the same controversy and determine whether a federal claim would appear on the face of a well-pleaded complaint in that action. *See Missouri ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1335 (8th Cir. 1997). "If, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 16 (1983).

---

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

With that in mind, we fail to see how this action presents a federal question. What Thunderhead seeks is, in large part, vindication of defenses to Chicken Bones's pending state-law claims. There is no plausible reason for Thunderhead to try to obtain a declaration that the pending unjust enrichment claim is untimely except to set up such a defense. And the requested declaration that Thunderhead did not infringe the Chicken Coop trade dress has a similar function: it would refute Chicken Bones's claim that Thunderhead violated its limited license to use the trade dress. Much the same goes for the requested declaration that the Chicken Coop intellectual property is invalid. If the district court issued that declaration, we have no doubt that Thunderhead would rely on it to oppose Chicken Bones's claim that Thunderhead unjustly enriched itself by misusing the intellectual property.

We acknowledge that Thunderhead purports to seek the same declaratory relief, as well as related declaratory relief, in anticipation of federal trade secrets, trademark, and trade dress claims that Chicken Bones might pursue, but any federal-law controversy between the parties is too speculative to support jurisdiction. The problem is one of justiciability. If a federal claim never takes a justiciable form, a district court can neither hear the claim nor, in the absence of another claim within its jurisdiction, exercise supplemental jurisdiction over claims that accompany it. *See, e.g.*, *City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1041 (8th Cir. 2010); *Scott Fam. Props., LP v. Mo. Highways & Transp. Comm'n*, 674 F. App'x 598, 598–99 (8th Cir. 2017) (per curiam). And when the federal claim is one for declaratory relief, justiciability requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" that relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).

We cannot accept Thunderhead's argument that the specter of federal trade secrets, trademark, or trade dress litigation satisfies this standard. A threat of litigation is among the circumstances that may give rise to a justiciable controversy, *see id.* at 128–32 & n.11, but the record contains no hint that Chicken Bones will

-3-

bring federal intellectual property claims against Thunderhead. *See Colonial Penn Grp., Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 234–36 & n.4 (1st Cir. 1987). What Thunderhead cites as evidence that a federal-law dispute will materialize is just evidence that a state-law dispute has materialized. It amounts to a list of accusations that Thunderhead misappropriated Chicken Coop trade secrets or infringed Chicken Coop trademarks or trade dress—all of which Chicken Bones made in state court in support of its state-law claims. We are doubtful that Chicken Bones's pursuit of those claims alone suggests that it will pursue substantially overlapping, if not duplicative, federal claims. But it certainly does not establish that the prospect of a federal-law dispute is immediate and real enough to be justiciable.

Even if we expand our view to consider evidence that Thunderhead attempted to introduce through a post-judgment motion below and an informal appellate request for judicial notice, the picture does not change. Take the pre-suit cease-and-desist letter that Chicken Bones sent to Anders. While the letter implied that Chicken Bones would sue Thunderhead for trade secrets misappropriation and trademark infringement, it never indicated whether Chicken Bones would bring state versions of those claims or federal ones. We need not decide whether a business faced with an ambiguous threat of trade secrets or trademark litigation faces a reasonable prospect of federal litigation, *see PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996), to conclude that the ambiguity here all but evaporated when Chicken Bones carried out its threat by asserting state-law claims. In context, the letter does little more than corroborate that a state-law dispute is ongoing between the parties.

Evidence that Chicken Bones petitioned the Trademark Trial and Appeal Board to cancel Thunderhead's federal trademark registration of a Chicken Coop logo does not add much either. Chicken Bones's prediction that Thunderhead would likely confuse consumers by using Chicken Coop trademarks, which it stated in the petition, was already apparent from Chicken Bones's state pleading, where the company advanced it in support of its state-law claims. Because of the prediction, the petition

may confirm the existence of a trademark infringement dispute between the parties, *see San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1027 (9th Cir. 2023), but it does not show that the dispute implicates federal law any more than the cease-and-desist letter did. Nor does anything else in the petition suggest that Chicken Bones will bring a federal intellectual property claim against Thunderhead in addition to its pending state-law claims.

We are unpersuaded by Thunderhead's effort to analogize this case to cases in which the litigation of trade secrets claims concerning a patented invention, perhaps together with other circumstances, gave rise to a reasonable apprehension of patent litigation concerning the same invention. *See, e.g.*, *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 975–76 (8th Cir. 2015). In the modern era, patent litigation is federal litigation. There is no state patent system, *see* 1 Moy's Walker on Patents § 1:13 (Nov. 2023 update), and exclusive jurisdiction over federal patent claims lies in the federal courts. *See* 28 U.S.C. § 1338(a). Unless states begin passing substantive patent laws, *but cf. Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151–57 (1989), that makes the reasonable apprehension of a patent claim a jurisdictional hook for a preemptive declaratory judgment action in federal court.

But trade secrets, trademark, and trade dress claims are different. Both federal and state law create such claims, *see* 3 McCarthy on Trademarks and Unfair Competition § 22:1 (May 2025 update); 1 Milgrim on Trade Secrets § 1.01 (2025), so federal-question jurisdiction will not always extend to them. We must look to context to determine whether a trade secrets, trademark, or trade dress dispute is a federal dispute. And here, the context suggests that Chicken Bones will pursue state-law remedies alone. The only justiciable controversy between the parties therefore arose under state law. Without any similarly immediate and real controversy arising under federal law, the district court lacked jurisdiction over Thunderhead's suit.

Affirmed.

_____

-5-